[Civ. No. 41054. First Dist., Div. One. June 6, 1978.]

FOUR SEAS INVESTMENT CORPORATION,
Plaintiff and Appellant, v.
INTERNATIONAL HOTEL TENANTS' ASSOCIATION et al.,
Defendants and Appellants.

**COUNSEL**

Hanson, Bridgett, Marcus, Milne & Vlahos, William J. Bush and Gintjee, Wong & Shortall for Plaintiff and Appellant.

Hardesty & Lau, Michael G. W. Lee, Gilbert T. Graham, Russell T. Kubota, Minami, Tomine & Lew, Garrick S. Lew, Bautista & Bautista, Raul S. Picardo, Jeffrey G. Lewis, Morrison & Foerster, Nelson G. Dong and Willard Carpenter for Defendants and Appellants.

**OPINION**

NEWSOM, J.—This appeal challenges the correctness of a judgment directing a verdict of unlawful detainer, and, in a cross-appeal, the adequacy of damages assessed against the detainer.

A jury trial in the San Francisco Superior Court ended when the jury failed to agree on the issue of liability, whereupon the trial judge after argument directed a verdict in favor of respondent on the issue of liability. The damage issue was then resolved by the jury in favor of respondent in the amount of $4,000.

Judgment was entered on May 3, 1976; on July 7, 1976, respondent's motion for a new trial on the damage issue was denied; the present appeals followed.

The factual background of this turbulent lawsuit may be summarized as follows.

Respondent is a California corporation which on October 31, 1973, purchased the International Hotel, located in downtown San Francisco, from its prior owners through their agent, Milton Meyer & Co.

When it purchased the hotel respondent knew of the existence of appellant, the International Hotel Tenants' Association, a month-to-month tenant of the previous owner, paying rental of $4,000 monthly, which up to mid-1973 had been attempting to negotiate a lease-purchase agreement with its landlord.

Escrow on the sale to respondent closed on December 31, 1973. Shortly thereafter, on January 29, 1974, the City and County of San Francisco filed suit against the former owners to abate the property as a public nuisance. Numerous code violations were listed, and a perusal of the complaint in the light of subsequent events makes it clear that the building was wretchedly substandard.

Respondent, refusing to negotiate with appellants, decided not to contest the action, permitted the city to obtain an abatement injunction and elected to demolish the building as part of a larger contemplated construction project.

Now events speeded up. As respondent's adamancy became clear, appellants heightened their efforts to enlist public and governmental support for their plight.

On September 22, 1974, respondent served a 30-day notice of termination on Diones, manager of the hotel, whereupon appellants discontinued direct rental payments, paying rent instead into an escrow account, refused to vacate, and filed a suit for damages on October 24, 1974.

On November 8, 1974, respondent filed the action for unlawful detainer on which this appeal is founded.

Appellants make three principal contentions in arguing for a reversal of the judgment. They contend that the trial court abused its discretion in directing a verdict for respondent on the issue of liability, in the light of substantial evidence establishing respondent's retaliatory motive in instituting the unlawful detainer action. They further contend that the trial court's jury instructions on the subject of agency constitute reversible error, and, finally, they contend the trial court erred in ruling that the notice to terminate need only have been served on the appellant association.

Respondent on its cross-appeal contends that the damages award of $4,000 was not based on substantial evidence, and that the trial court committed prejudicial error by instructing that, in assessing damages, the jury could consider respondent's alleged breach of the implied warranty of habitability.

I

A review of the record reveals that in negotiating the purchase of the hotel, respondent very well knew of the preexisting strife between its former landlord and tenants, and that the property had become a symbol in a bitter political, economic and sociological struggle among various factions in the community. Interesting though they may be, the origins of that struggle are irrelevant to the resolution of this issue.

The standard used in reviewing the correctness of a directed verdict is well expressed in *Estate of Lances* (1932) 216 Cal. 397 [14 P.2d 768], where the court stated: "A directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.]" (P. 400. Cf. also *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360].)

The so-called "scintilla of evidence" rule has been abandoned, and the test is now grounded on the substantiality of the evidence adduced by the party against whom the directed verdict is sought, viewing it alone and in its most favorable light. (*Beck* v. *Kessler* (1965) 235 Cal.App.2d 331, 335 [45 Cal.Rptr. 237].)

Having this well-fixed standard in mind, we can find no error in the trial court's direction of verdict.

A careful scrutiny of the entire record reveals no evidence in support of appellants' defense of retaliatory eviction. Rather, respondent's motivation seems clearly to have been a positive economic interest in gain, or profit.

■ Retaliatory eviction occurs, as Witkin observes, "[W]hen a landlord exercises his legal right to terminate a residential tenancy in an authorized manner, but with the motive of retaliating against a tenant who is not in default but has exercised his legal right to obtain compliance with requirements of habitability." (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 533, pp. 2204-2205.) ■ It is recognized as an affirmative defense in California (cf. *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97]; *S. P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 724 [131 Cal.Rptr. 761, 552 P.2d 721]); and as appellant correctly argues, it extends beyond warranties of habitability into the area of First Amendment rights. (Cf. *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309]; and *Green* v. *Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168].)

■ The evidence here, however, falls far short of establishing retaliatory eviction. It is true, as appellants argue, that motive is ordinarily a factual issue to be resolved by the trier of fact, but such an issue cannot be submitted to the jury unless substantial evidence appears in the record to support it. (*Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756 [91 Cal.Rptr. 745, 478 P.2d 465].)

The crucial factor which belies the conclusion that respondent in serving notice was actuated by a retaliatory motive is the uncontroverted evidence of a preexisting rational, uncontrived and substantial business motive. Respondent bought the building with knowledge of its defects, and for the purpose of demolition. That it may have from the first intended to evict its tenants as part of the process hardly establishes the existence of the kind of reprisal interdicted by the cases on retaliatory eviction.

■ Appellants next contend that the trial court erred in rejecting their proffered agency instructions, to which respondent replies that, since the

question of liability was directed by the court, the issue is moot on appeal.

We agree with appellants that, since the instructions if materially erroneous could have prevented the jury from arriving at a verdict, the question is properly before us.

We find, however, that the court's instructions did "fully and fairly" advise the jury as to the law of agency and retaliatory motive, as required by law. (*Dodge* v. *San Diego Electric Ry. Co.* (1949) 92 Cal.App.2d 759 [208 P.2d 37].)

The instructions submitted by appellants are largely argumentative and differ only in degree from those given by the court. ▆ Moreover, under the constitutional prohibition against reversal for nonprejudicial error, it must be shown that the error, if any, was likely to mislead the jury. Our review of the record reveals no reasonable probability that a result more favorable to appellants would have been reached but for the alleged error. (Cf. 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 318, pp. 4297-4298.)

▆ Finally, appellants argue that the trial court erred in ruling that service of a 30-day notice to terminate was not required on any tenant save the appellant International Hotel Tenants' Association.

The record shows that on September 22, 1974, respondent served a 30-day notice of termination on International Hotel Tenants' Association, and that no other tenant was ever served. This argument does not require extensive discussion since Code of Civil Procedure section 1161 requires notice to terminate on the tenant only and not upon subtenants, who were not parties to the month-to-month tenancy.

A comparative reading of section 1161, subdivision 1, with subdivisions 2, 3 and 4 thereof, reveals that the Legislature did intend to distinguish between notice requirements on subtenants as opposed to tenants, the intent clearly being to provide an opportunity for a subtenant to cure his tenant's default except where, as here, the default is incurable because the term has expired. (30 Cal.Jur.2d, Landlord and Tenant, § 245, pp. 389-390.)

For these reasons we conclude the trial court did not err in its instruction that service of the 30-day notice was not required on any appellant except International Hotel Tenants' Association.

Respondent on cross-appeal contends that there was no substantial evidence to support the jury's award of damages in the amount of $4,000.

While it is true the evidence at trial that the monthly rental value of the subject premises was not less than $4,000 went uncontradicted, and that rent was unpaid for a period of over 18 months, we cannot say that such damages were inadequate as a matter of law.

■ The test is not, as respondent repeatedly suggests, the adequacy of the award—a question of weight well within the jury's fact-finding province—but whether there was substantial evidence to support it. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

Here, the record shows in addition to reasonable rental values and the period of unlawful detention, the fact that the hotel was maintained in abysmal condition, in violation of health and safety codes, and the trial court properly instructed the jury that, in arriving at a damage figure, it could consider breach of the implied warranty of habitability. Obviously the jury did so, and we will not, faced with a conflicting record containing substantial evidence justifying offsets against rental value, substitute our view of the correctness of their award, particularly since we are bound to indulge every reasonable inference in favor of sustaining the verdict and judgment. (Cf. *Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653].)

■ Respondent's contention that the trial court erred in giving the warranty of habitability instruction is incorrect.

It is not true that a tenant who unlawfully detains becomes a mere trespasser: to the contrary, a tenant is entitled to peaceful possession until the detainer action culminates in a judgment of forfeiture. (3 Witkin, Summary of Cal. Law, Real Property, § 526, pp. 2200-2201.)

Moreover, respondent's view that the subject lease is commercial rather than residential and consequently outside the ambit of the

protection afforded residential lessees under *Green* v. *Superior Court, supra,* 10 Cal.3d 616, is specious.

■ While several tenants of the hotel were commercial, the International Hotel Tenants' Association's membership was exclusively residential, and its primary purpose was to represent the rights of those residential tenants. Moreover, the warranty of habitability could, since *Golden* v. *Conway* (1976) 55 Cal.App.3d 948 [128 Cal.Rptr. 69], extend to small commercial operations if the facts warranted, which they do not.

The judgment is affirmed. Each party to bear its own costs on appeal.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied June 26, 1978, and the opinion was modified to read as printed above. The petition of the defendants and appellants for a hearing by the Supreme Court was denied August 3, 1978. Tobriner, J., and Newman, J., did not participate therein.